***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Garner along with the briefs and arguments on appeal. The appealing party has shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms, with some modification, the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. Plaintiff's average weekly wage as set forth on the Form 22 (Wage Chart) is $577.05, which yields a compensation rate of $384.70 per week.
4. Plaintiff was alleging an injury by accident that occurred on or about August 11, 1999, resulting in an injury to the back and hip.
5. Defendant-employer denied liability.
6. The issues before the Commission are: whether plaintiff in fact suffered from a compensable injury by accident, and, if so, what are the compensable consequences.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff alleges that, on August 11, 1999, while in the scope and course of his employment with Employer-Defendant, he sustained an injury by accident to his back.
2. However, on April 12, 1999, (eleven days after plaintiff began working for Corporate Express), plaintiff's counsel wrote to Dr. Mark L. Moody seeking an opinion on whether plaintiff's present pain was causally related to an alleged June 22, 1995 lifting injury at Sears. On December 14, 1999, plaintiff filed a Request for Hearing against Sears, Roebuck 
Company and Lumbermen's Mutual Casualty Company seeking payment for days missed and medical treatment for the alleged injury of June 22, 1995.
3. At the time of hearing before the Deputy Commissioner injury, plaintiff was a fifty-six year old male. From August 25, 1969 through February 14, 1997 plaintiff worked as a service technician for Sears, Roebuck Company.
4. During his tenure with Sears, plaintiff fractured a rib on November 17, 1979, injured his right shoulder on November 26, 1976, underwent surgery on October 4, 1983 for a tear of the medial meniscus of his left knee, underwent an arthroscopic partial medial meniscectomy of the left knee on October 9, 1989, underwent an arthroscopic partial lateral meniscectomy of the right knee on October 29, 1990, struck his head when the truck he was operating was rear-ended on April 9, 1990, and injured his lower back and left hip while lifting a radial arm saw on June 22, 1995. The alleged injury of June 22, 1995 is the subject of a separate request for hearing on the grounds of a change of condition.
5. From March 29, 1998, to April 25, 1998 plaintiff worked part-time as a truck driver for Velvet Ridge Greenhouses. Plaintiff left this job for a position as a convenience store clerk for Plaza-C-Mart Texaco from May 5, 1998 to March 30, 1999. Plaintiff testified that he made this job change because his family physician advised him to discontinue the work at Velvet Ridge Greenhouses due to his heart condition. However, Dr. Harley's medical note from November 24, 1998 indicates that plaintiff reported having gone to truck driving school since his retirement from Sears, but found that he could not do that work because the pain was too great for him to ride and sit for prolonged periods of time, and that he was doing convenience store work because this allowed him to walk around so that his symptoms were minimized.
6. Plaintiff went to work for defendant Corporate Express on April 1, 1999. Plaintiff did not tell Corporate Express he had chronic back problems when he applied for work on March 22, 1999, despite plaintiff knowing that he would be asked to drive long distances for defendant Corporate Express.
7. On March 30, 1999, prior to beginning his employment with Corporate Express, plaintiff underwent the annual physical examination required by the Federal Motor Carrier Safety Regulations to maintain his Commercial Driver's License. The form completed by Dr. Spies during plaintiff's examination on March 30, 1999 indicates that, despite his prior medical history, plaintiff denied having a permanent defect from illness, disease, or injury. Dr. Spies' testimony further confirms that plaintiff did not divulge the existence of plaintiff's June 22, 1995 lifting injury at Sears, any of the prior tests or diagnoses made with regard to plaintiff's back, or plaintiff's prior problems, including ones that specifically had prevented him from driving trucks and caused him to take a job in a convenience store. Dr. Spies confirmed that he would have expected plaintiff to have informed him of such a history and testified that had Dr. Spies been aware of such a history the exam possibly would have been more detailed.
8. Plaintiff alleges that, on August 11, 1999, while operating a truck over Interstate Highway 81 in Harrisburg, Pennsylvania, he sustained injuries when the truck went over a washboard-like stretch of road and the air cushion integrated in the drivers' seat did not hold, causing plaintiff's posterior to impact with a plywood board that was part of the seat construction.
9. Plaintiff completed the return trip to North Carolina, but alleges that he had to stop periodically to walk around due to severe discomfort. Nevertheless, plaintiff made a round trip from the Corporate Express depot in Fletcher, North Carolina to Cleveland, North Carolina the very next day, on August 12, 1999.
10. Plaintiff was seen by Dr. Wade K. Grainger on August 13, 1999. In response to questions that were put to him by Dr. Grainger, plaintiff denied having any chronic back pain and denied a history of any other back injury. Plaintiff indicated only that he was having low back pain after driving over a bumpy piece of interstate in a truck for Corporate Express. Given plaintiff's representations, Dr. Grainger's impression was low back pain, and he placed plaintiff out of work. Dr. Mark D. Lenderman also saw plaintiff on August 17, 1999. At his examination with Dr. Lenderman, plaintiff complained of left hip pain, which he attributed to an injury sustained while working at Sears four years ago and for which he requested an orthopaedic referral. Plaintiff made no mention of his prior injuries or his visit to Dr. Lenderman when he returned to Dr. Grainger on August 23, 1999 complaining of his left leg feeling weak. Dr. Grainger continued plaintiff out of work through September 3, 1999. Plaintiff made no mention of his prior injuries or his visit to Dr. Lenderman when he returned to Dr. Grainger on September 3, 1999.
11. Dr. Grainger referred plaintiff to Dr. Andrew Rudins of Southeastern Sports Medicine. Plaintiff made no mention of his prior injuries or his visits to Dr. Lenderman or Dr. Moody when he returned to Dr. Grainger at Park Ridge Occupational Health on September 17, 1999.
12. On September 24, 1999, plaintiff saw Dr. Rudins for the second time. However, it was the first time that plaintiff reported a four year history of left-sided buttock pain for which he had received treatment from Dr. Harley at Blue Ridge Bone Joint.
13. Plaintiff maintains that he has not been able to return to work since August 12, 1999 due to the injuries he sustained to his lower back on August 11, 1999. However, the August 24, 2000 report of Dr. Craig Brigham of the Miller Orthopaedic Clinic, indicates that plaintiff does not presently have any impairment with regard to his back, has no restrictions from work, and would not benefit from any further treatment. Further, Dr. Brigham testified: "His behavior was extraordinarily abnormal. I'll say it for the record, he's as close to malingering as I've ever seen. It's that exaggerated." "I think the patient is seeking disability, and I spoke to him frankly about that. He had a heart attack, and I think he's probably scared about his employment But if you are asking me objectively about his back, there's not a big problem there."
14. Plaintiff was hospitalized from May 17, 2000, to May 22, 2000, to undergo a balloon angioplasty of his right coronary artery due to blockage at the site of the previously placed stent, and he has applied for Social Security Disability benefits primarily because of that condition.
15. Dr. Rudins is the only physician who opined that plaintiff sustained an annular tear as a result of the alleged injury by accident of August 13, 1999. This opinion is not given any weight.
16. Dr. Rudins never had a true and accurate picture of plaintiff's medical history. Plaintiff never even mentioned his four-year history of left sided buttock pain when he first saw Dr. Rudins on September 14, 1999, and Dr. Rudins never had any knowledge of plaintiff's June 22, 1995 lifting injury while employed at Sears.
17. Each time Dr. Moody opined that the alleged incident of August 11, 1999 aggravated the preexisting condition, Dr. Moody stated that he had never had the details of what allegedly occurred, that plaintiff did not mention it to him, and that plaintiff indicated that he had had the symptoms since 1995. Dr. Moody's own note of September 14, 1999 reflects that plaintiff reported his problem as: "Intense low back pain, left posterior thigh and calf pain since work-related injury June 1995. Increasing symptoms over the past six months."
18. Dr. Moody confirmed that he did not recall plaintiff mentioning anything about the alleged incident of August 11, 1999, and confirmed that, if plaintiff had mentioned it, it would have been reflected in his notes. Dr. Moody testified that Mr. Payne only described having been "pain free in regards to low back and left lower extremity pain until June 22, 1995, when he moved a radial arm saw off a float while employed by Sears." Dr. Moody also indicated that "[he] did not get the history that [Mr. Payne] had heart problems because he didn't really mention them to me, though I specifically asked about angina, hypertension, heart disease, kidney or lung problems." Dr. Moody further indicated that Mr. Payne did not mention having a stent placed in his right aorta on February 16, 1998 following a myocardial infarction.
19. The plaintiff was not truthful to his physicians regarding his medical history.
20. Plaintiff did not suffer an injury by accident or a specific traumatic incident on August 11, 1999.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. Plaintiff's problems did not result from an injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff has no disease and no disability related to causes and conditions that are characteristic of and peculiar to his employment with defendant-employer. N.C.G.S. § 97-52.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits must be, and hereby is, DENIED.
2. Each side shall pay its own costs.
 S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________________________ THOMAS JEFFERSON BOLCH COMMISSIONER